CLARK ET, PLAINTIFFS-APPELLEES, *v.* ROCKWOOD & CO., DEFENDANT-APPELLANT.

Ohio Appeals, Fourth District, Scioto County.

No. 709. Decided December 28, 1960.

430

Mr. *William L. Howland, Mr. Robert K. McCurdy* and *Mr.* *William H. Horr,* for plaintiffs-appellees.

*Messrs. Miller, Searl & Fitch,* by *Mr. Chester P. Fitch,* for defendant-appellant.

COLLIER, J.  This is the second appeal of this case to this Court.  In the prior appeal, the judgment of the Common Pleas Court of Scioto County was affirmed, holding that the plaintiffs-appellees, as dissenting shareholders of the Selby Shoe Company, had complied sufficiently with the provisions of Section 1701.85, Revised Code, to entitle them to a determination of the fair cash value of their shares of stock in said Selby Shoe Company, which had on November 5, 1956, merged with Rockwood & Co., a corporation.  The motion of the defendant-appellant to certify the record from the judgment of affirmance by this court to the Supreme Court of Ohio was disallowed.

Upon the return of the mandate from the Supreme Court, the Common Pleas Court, pursuant to the provisions of Section 1701.85, Revised Code, appointed three appraisers to fix the fair cash value of the stock owned by the dissenting share holders.  The report of the appraisers was filed with the court, to which the defendant-appellant filed objections.

On motion of the plaintiffs-appellees, after a hearing, on May 28, 1960, the court confirmed the appraisers' report fixing the fair cash value of the stock at $24.00 per share and rendered

judgment in favor of the dissenting share holders and against Rockwood & Co. for their respective amounts with interest at 6% per anum from December 10, 1956. From this judgment Rockwood & Co., the defendant, has appealed to this court on questions of law. The plaintiffs-appellees, the dissenting shareholders, will be referred to herein as the plaintiffs and Rockwood & Co., defendant-appellant, will be referred to as the defendant.

The assignments of error urged by the defendant are:

(1) There was irregularity in the proceedings of the appraisers amounting to an abuse of discretion.

(2) The finding of the trial court that $24.00 per share was a fair cash value is not supported by the evidence, is contrary to law, and amounted to an abuse of discretion.

(3) An award of interest at six percent per annum as of December 10, 1956, amounted to an abuse of discretion by the trial court.

It will be observed that all three assignments of error are based upon an alleged abuse of discretion by the appraisers and the trial court. The term "discretion" is defined by Bouvier's Law Dictionary as, "The power exercised by courts to determine a question to which no strict rule of law is applicable by which, from their nature, and the circumstances of the case, are controlled by the personal judgment of the court." The meaning of the term "abuse of discretion" has been held by the Supreme Court of Ohio to connote something more than an error of law or of judgment, but that "it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court." *Steiner* v. *Custer*, 137 Ohio St., 448, 31 N. E. (2d), 855; in *State, ex rel. Blasko* v. *McGinnis*, 167 Ohio St., 532; *Granneman* v. *Cinn. St. Ry. Co.*, 67 Ohio App., 536; 37 N. E. (2d), 971.

In regard to the first two assignments of error, the record discloses that upon final termination of the prior appeal and the return of the mandate to the Common Pleas Court on November 16, 1959, three appraisers were appointed by the court to fix the fair cash value of the stock owned by the plaintiffs. The plaintiffs and defendant each selected one appraiser and the court selected one. There is no complaint that any of the appraisers were not qualified. The court properly and adequately instructed the appraisers as to their duties. The ap-

praisers had one public meeting where all parties concerned were present and evidence as to the value of the stock was adduced and a record made of the hearing. It does not appear that any of the parties were precluded from introducing any evidence they may have desired to offer.

The report of the appraisers was filed on December 8, 1959, and briefly states that they find the true value of the stock in money as of the 4th day of November, 1956, to be $24.00 per share. The report recites none of the factors considered by the appraisers in arriving at their conclusion, although the appraisers were instructed by the court to do so.

In the hearing on the defendant's objections to the report and plaintiffs' motion to confirm the report, one of the appraisers, Samuel E. Frowine, Jr., who was selected by the defendant, testified that the appraisers held six or eight meetings and considered many factors, with the best information available, in determining the value of the stock; that a statement showing the factors considered would be filed if so desired, but the witness was not required to do so. The hearing on the objections to the report of the appraisers was rather lengthy. The defendant attempted to show that the value of the stock as of November 4, 1956, was much less than the value fixed by the appraisers by reason of loss of profits between April 30, 1956, and November 4, 1956. In their petition, the plaintiffs demanded that the defendant pay to them the sum of $35.00 per share for their stock and the defendant agreed to pay the sum of $17.25 per share. It was no simple, easy task for the appraisers to fix the fair cash value of this stock.

The Selby Shoe Company had a long and interesting history of more than eighty years and had assets of the value of several million dollars. We have examined this record carefully in connection with the provisions of Section 1701.85, Revised Code, which prescribes the method and procedure in determining the rights of dissenting shareholders of a corporation in case of a merger with another company. Our conclusion is that while the appraisers may not have complied strictly with the statute and the instructions of the court in that the report was not filed within ten days after their appointment and the report did not include the factors considered in reaching their con-

clusion, there is no evidence to show that the appraisers did not perform their duties fairly and impartially and that all the necessary elements and factors as to value were given proper consideration. There was no substantial evidence that would have justified the trial court in rejecting the report of the appraisers. Apparently the appraisers were well selected. One was a stock broker, one a former Selby Shoe Company executive and the other an attorney with experience in corporation matters. We find no abuse of discretion by either the court or. the appraisers. The evidence was somewhat in conflict as to the value of the stock, but it was amply sufficient to support the judgment in confirming the report of the appraisers. The first two assignments of error are overruled.

Did the trial Court err in allowing the plaintiffs interest at the rate of six percent per annum from December 10, 1956? This was the date when the dissenting shareholders, by the provisions of Section 1701.85, Revised Code, were required to deliver their shares of stock to the defendant corporation for endorsement of the statutory legend showing demand for the fair cash value of the stock. Prior to the amendment of the statute, effective October 11, 1955, the statute provided for interest with the judgment, "at six percent from a date which shall be fixed in such judgment." Presently the statute reads, "with interest at such rate from such date as the court shall fix in said judgment."

As the statute read prior to amendment, the interest was fixed at a certain rate, but the date from which the interest became payable was left to the discretion of the court. The present statute places both the rate of interest and the date from which it becomes payable in the sound discretion of the court.

The defendant contends that the trial court abused its discretion in fixing both the rate of interest and the date from which the interest would run. In support of its contention, the defendant claims that the rate of interest should be commensurate with the shareholder's return on their stock which, for the three years prior to the merger, was five cents per share per annum. Six percent of $24.00 per annum is $1.44. Also that the interest should become payable on the date of the judgment, which was rendered on May 28, 1959; that prior to that

date plaintiffs' had only an unliquidated claim against the defendant. Plaintiffs claim they are entitled to the prevailing rate of interest on the value of their stock from the date the certificates were delivered to the corporation for the endorsement of the statutory legend which was on December 10, 1960; that from that date their status changed from shareholders to that of creditors; that from December 10, 1956 the defendant has had the use of their stock or the value thereof; that the defendant, by prolonging the litigation, has been responsible for the delay in terminating the controversy as to the fair cash value of the stock.

In *Wisman et al* v. *Cleveland Railway Company*, 39 Ohio Law Abs., 391, decided June 21, 1943, the First District Court of Appeals, sitting in the Eighth District, held that under the statute, Section 8623-72, General Code, with the same provisions as to the date for the payment of interest as now contained in Section 1701.85, Revised Code, interest runs from the date of the judgment. That is the date the court approved the report of the appraisers. The opinion of the court is very brief, recites none of the facts and gives no reason for the conclusion. A case with the same style, apparently the same case, reported in 25 Ohio Opinions, 281, a Cuyahoga County Common Pleas Court decision, decided January 8, 1943, by Hurd, J., holds,

"In the absence of some peculiar circumstances interest upon the award should run only from the time when the claim becomes legal, and the amount due upon which interest should be computed is ascertainable, that is, from the date of confirmation by the court of the appraiser's award."

We agree with the comment of Judge Hurd, in the opinion, where he says, "It would seem that the statute, being silent as to the date from which interest should run, it being left to the discretion of the court, that each case must stand on its own merits so far as this question of interest is concerned." In the *Wisman case*, after considering all the facts and circumstances, it was held that the interest should run from the date of the confirmation of the appraiser's award.

In the instant case the trial court had the benefit of the evidence adduced in the hearing before the appraisers and also in the hearing on the objections to the appraiser's report. In an appeal on questions of law this court has no authority

to substitute its judgment for that of the trial court on questions of fact it is authorized by law to determine. The only question we may decide is whether the judgment, fixing the date from which interest should run, is arbitrary, fanciful or capricious. In *Klein* v. *Theatres Co.*, 148 Ohio St., 308, Judge Stewart describes the position of a dissenting shareholder in these words, ''He loses his rights as a shareholder and in lieu thereof becomes a creditor of the corporation.'' In the state of New York, the statute provides that the court shall award interest on the value of the stock from the date of taking the action to which objection was made. Applying this rule in the instant case, the interest would begin to run from Nov. 5, 1956. Considering all the facts and circumstances in the case at bar, we cannot say, as a matter of law, that the trial court abused its discretion in this respect.

Likewise, in regard to the rate of interest fixed by the Court on the award of the appraisers, under the provision of Section 1701.85, Revised Code, it was left entirely to the discretion of the court. On December 10, 1956, when the plaintiffs delivered their stock certificates to the defendant, they lost their rights as shareholders completely and became creditors of the corporation.

However, it does appear greatly out of proportion to award to a holder of a share of stock valued at $24.00, interest thereon in the sum of $1.44 per annum when for the three years prior thereto he had received only five cents return on the same investment. We do not believe these facts and figures justify the return of interest at the rate of six percent and that, in this respect, the judgment should be modified. In a matter of this kind this court is without authority to render final judgment. We may only suggest a remittitur of four percent of the interest, reducing the rate of interest to two percent on the award, beginning December 10, 1956.

If this remittitur is accepted by the plaintiffs, the judgment will be affirmed. Otherwise, the judgment will be reversed and the cause remanded to the Common Pleas Court for a new trial on this one issue. The defendant has requested, in the event we arrive at a different conclusion, than announced in *Wisman* v. *Cleveland Railway Co.*, 39 Ohio Law Abs., 391, on the question as to the date from which the interest should run,

that this case be certified by this court to the Supreme Court of Ohio as being in conflict with the *Wisman case*.

In our view of the situation, this question of fixing the date must be determined on the facts and circumstances in each case. No facts are stated in the *Wiseman case*, and, therefore, no comparison with the instant case may be drawn. The statute is silent both as to the date and the rate of interest. Each case must stand on its own merits. An order that may be just and fair in one case may have just the opposite effect in another case. It is a situation that necessarily must be left to the discretion of the court in each case and patently that was the purpose in amending the statute by deleting the provision which fixed six percent per anum as the proper rate of interest. For these reasons defendant's request will be denied.

The judgment is affirmed on condition the plaintiffs accept the remittitur suggested.

Judgment affirmed as modified.

GILLEN, P. J., and RADCLIFF, J., concur.